IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **KENTES WEST, # K-82893** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 16-cv-414-SMY |
| | ) |
| **KIMBERLY BUTLER, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff, currently incarcerated at Menard Correctional Center ("Menard"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is serving sentences for murder, armed robbery and aggravated battery. In his Complaint, Plaintiff names 29 individual defendants and includes two more unknown defendants. He raises a number of claims, including being subjected to unconstitutional cell conditions, attacks on him by prison guards and by other inmates at the instigation of prison officials, denial of medical care following the attacks, deprivation of his legal materials, destruction of his property and harassment by prison staff. The claims arise out of several distinct incidents which involve different defendants. Additionally, some of the listed defendants are not associated with a specific claim.

The Complaint is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A, which requires the Court to screen prisoner complaints, and to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. Initially, however, the Court shall consider whether the various claims against different

defendants may appropriately proceed together in the same case. *See George v. Smith*, 507 F.3d 605 (7th Cir. 2007) (unrelated claims against different defendants belong in separate lawsuits).

## The Complaint

Plaintiff was first confined at Menard in October 2011. As background to his current claims, he describes having filed grievances over witnessing the beating of another inmate by prison guards, which resulted in Plaintiff's "aggression" classification being increased for no reason (Doc. 1, pp. 21-22). He later was subjected to cell shakedowns, fabricated disciplinary charges, placement in segregation and a beating by prison guards, after Plaintiff wrote other grievances and asked for protective custody. He notes that those incidents "led up to the events which brought about this new complaint of Plaintiff being assaulted by staff member and inmates" (Doc. 1, p. 24). The Complaint then describes a number of alleged violations of Plaintiff's rights, starting in approximately June 2015. He attaches 90 pages of exhibits to his pleading (Docs. 1-1 and 1-2).

Plaintiff alleges that he has been threatened by staff members, had meals withheld and has received meal trays that contained trash or tobacco spit (Doc. 1, p. 24). On June 17, 2015, "they" began to throw Plaintiff's laundry away (Doc. 1, p. 25).

On July 2, 2015, Plaintiff was denied a meal tray. His request to speak with an officer was denied, so he flooded his cell to get attention. Defendant Sgt. Bebout and Defendant Best responded by threatening Plaintiff and issuing him a disciplinary ticket. These defendants then had the water and toilet in Plaintiff's cell turned off "for longer than they [were] supposed to" (Doc. 1, p. 25; Doc. 1-2, pp. 2-3).

On July 5, 2015, Plaintiff was still in a cell with no working toilet or running water and received a food tray with trash on it. In response, Plaintiff threw spoiled food and feces on the

worker (presumably the inmate who gave him the tainted tray) in an attempt to be moved. Defendant Sgt. Bebout and Defendant Mayer told Plaintiff to cuff up so they could let the other inmate (Linzy) beat him, but Plaintiff refused to submit to being handcuffed. Another officer intervened and Plaintiff was not beaten (Doc. 1, p. 26).

On July 10, 2015, Plaintiff complained to Defendant Counselor Nippe that his grievances were not being answered. He wanted to lay the groundwork for going to court, but more importantly, wanted to obtain a transfer. She responded that answering grievances was up to the discretion of Menard officials. Plaintiff had his sister contact Defendant Warden Butler regarding his grievances being discarded or ignored (Doc. 1, pp. 26-27).

On the morning of July 17, 2015, the inmate whose cell was directly above Plaintiff's flooded Plaintiff's cell with urine and feces by repeatedly flushing the toilet in the upstairs cell. Plaintiff had to remain in his contaminated cell until 11:00 a.m. before he was finally allowed out for workers to clean the cell (Doc. 1, pp. 27-28). Plaintiff does not identify which officers were involved in this incident.

On July 20, 2015, Plaintiff went out to the yard for the first time in months and was attacked by two inmates whom he did not know. He thought the attack was instigated by another inmate, but now believes that a prison official (whom he does not identify) was behind it. Unnamed staff had previously threatened Plaintiff about going out to yard, which led him to stop going outside. Plaintiff was issued a disciplinary report which he claims was factually incorrect; he characterizes the altercation as a "three on two fight." Defendant Brookman chaired the disciplinary committee and punished Plaintiff with six months in segregation for his involvement (Doc. 1, pp. 28-29; Doc. 1-2, pp. 9-12).

After this incident, a fellow inmate (White) told Defendant Rakers that the July 20th fight

was racially motivated and that Plaintiff had started it, causing Defendant Rakers to target Plaintiff. On July 29, 2015, inmate White threw feces in front of Plaintiff's cell and told Defendant Rakers that Plaintiff did it. Defendant Rakers sent Defendant Slavens to Plaintiff's cell to threaten him (Doc. 1, pp. 29-30).

On July 30, 2015, Defendant Rakers tried to give Plaintiff an empty food tray. Plaintiff reported the empty tray to Defendant Harris who told Plaintiff to talk to his gallery officer, but failed to summon another officer for Plaintiff or get him another tray. Plaintiff responded by again flooding his cell to get the attention of officers. Defendants Eoavaldi and Paige came on the scene and told Plaintiff he was "going to get it today" (Doc. 1, p. 31). Plaintiff refused to cuff up on their orders, fearing a beating. Defendants Eoavaldi and Paige issued Plaintiff a disciplinary report, then sent Orange Crush officers to deal with Plaintiff. Plaintiff tried to comply with the Orange Crush officers, but they threw him to the ground, put his face in toilet water, pulled out his hair, sprayed him with a chemical substance and "rubbed agent orange pepper spray" on his genital area. *Id*. Plaintiff's clothes and Nike shoes were thrown in the trash and he was placed into a cell with no water, no working toilet, no mattress and no clothing, "for longer than is required." *Id*. Plaintiff apparently remained in that cell until he was transferred out on August 5, 2015, at which time he still had no mattress, sheets or running water.

On August 4, 2015, Defendant Rakers intentionally slammed Plaintiff's hand in the metal food slot to his cell, causing bleeding and the later loss of two fingernails (Doc. 1, p. 32). Defendant Rakers then refused to get medical attention for Plaintiff. Plaintiff showed the wounds to Defendant Nurse Misty, who refused to help him. The next day (August 5, 2015), a medical technician (Stephanie, who is not a named Defendant) told Plaintiff to clean the dried blood, but Plaintiff could not do so because his water was still off. She then told him to get it

addressed after he was transferred to Stateville Correctional Center.

Unidentified staff members have kept Plaintiff's legal material from him, forcing him to go to court without his papers on July 9, 2015 and August 5, 2015 (Doc. 1, pp. 24-25).

On August 26, 2015, Plaintiff was returned to Menard from Stateville and placed on Four Gallery. He complained about this placement in a letter to Defendant Butler because he was being harassed by staff and by inmate worker Linzy in that location (Doc. 1, p. 33). He was placed in a cell (# 419) where the sink and toilet did not work properly. He learned that his TV, headphones and lamp had been damaged in his absence. Staff took $125.00 from Plaintiff, apparently to repair the items (Doc. 1, pp. 33-34). Defendant I.A. Officer S. Bebout (Internal Affairs Officer) gave false information about the condition of Plaintiff's property.

Plaintiff wrote to the U.S. Department of Justice in September and October 2015, asking them to investigate Menard officials (Doc. 1, p. 34; Doc. 1-1, p. 29). On October 7, 2015, Plaintiff went on suicide watch in an attempt to get staff to respond to a grievance (Doc. 1, p. 35).

On November 10, 2015, Plaintiff was again attacked, this time by three other inmates (Doc. 1, pp. 35-36). During the assault, Defendant Swisher sprayed Plaintiff with mace. Plaintiff was repeatedly kicked in the head and after the assault, Defendant Chad and others would not give Plaintiff any pain medication. Based on information provided to Plaintiff by Defendant Bump (of Internal Affairs), Plaintiff claims that this attack on him was set up by Defendant Sgt. Bebout.

On an unspecified date, Plaintiff had a call pass to go for psychological health care and to the clothing room, but Defendant Migneron would not allow him to go out on these call passes (Doc. 1, p. 36). A mental health worker (Meyers, who is not a Defendant) came to Plaintiff's

cell.

On December 1, 2015, Plaintiff went on suicide watch again in an attempt to get a response to a grievance. On December 13, 2015, Plaintiff filed another grievance over the November 10, 2015 attack, after Defendant Hill said she did not receive his earlier one.

On December 24, 2015, Plaintiff met with Defendant Internal Affairs Officer S. Bebout (the wife of Defendant Sgt. Bebout), who told Plaintiff that both she and her husband disliked him because he had gone on a hunger strike and suicide watch. At some point, Plaintiff told Defendant I.A. Officer S. Bebout that he had conflicts with inmate White. On January 5, 2016,[1] Plaintiff was moved to a cell right next door to inmate White (Doc. 1, p. 37). Plaintiff states that he has a constant fear of being harmed and no longer leaves his cell at all.

Plaintiff seeks compensatory and punitive damages (Doc. 1, p. 37).

## **Discussion**

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following 19 counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:** Eighth and/or Fourteenth Amendment claim against Unknown Defendants who threw away Plaintiff's laundry on June 17, 2015;
>
> **Count 2:** Eighth Amendment claim against Unknown Defendants who denied Plaintiff a meal on July 2, 2015, and put trash in Plaintiff's food on July 5, 2015;
>
> **Count 3:** Eighth Amendment claim against Defendants Sgt. Bebout and Best for

---

[1] Plaintiff wrote this date as "2015," but the chronology of his narrative suggests that he meant to write "2016" (Doc. 1, pp. 36-37). For the purposes of this summary and designation of claims, the Court will assume that the incident took place in 2016.

shutting off the water and toilet in Plaintiff's cell on July 2, 2015, and keeping him confined in the cell without water or a working toilet until at least July 5, 2015;

**Count 4:** Eighth Amendment claim against Defendants Sgt. Bebout and Mayer for attempting to have another inmate beat Plaintiff on July 5, 2015;

**Count 5:** Fourteenth Amendment Due Process claim against Defendants Nippe, Butler, and Hill for failing to answer Plaintiff's grievances;

**Count 6:** Eighth Amendment claim against Unknown Defendants who kept Plaintiff in his cell for several hours after it was flooded with urine and feces on July 17, 2015;

**Count 7:** Eighth Amendment claim against Unknown Defendant(s) who incited other inmates to attack Plaintiff in the yard on July 20, 2015, and against Defendant Brookman for imposing disciplinary segregation on Plaintiff as punishment for fighting back after he was attacked;

**Count 8:** Eighth Amendment claim against Defendants Rakers and Slavens for threatening Plaintiff on July 29, 2015, after another inmate blamed Plaintiff for throwing feces;

**Count 9:** Eighth Amendment claim against Defendants Rakers and Harris, for failing to feed Plaintiff a meal on July 30, 2015;

**Count 10:** Eighth Amendment claim against Defendants Eoavaldi and Paige, for sending the Orange Crush team to remove Plaintiff from his cell on July 30, 2015, and against the Unknown Orange Crush Officers, for subjecting Plaintiff to excessive force on that date;

**Count 11:** Eighth Amendment claim against Defendants Eoavaldi and Paige, for having Plaintiff placed in a cell with no water, no working toilet, no mattress, and no clothing, from July 30 until approximately August 5, 2015;

**Count 12:** Eighth Amendment excessive force claim against Defendant Rakers for slamming Plaintiff's hand in the food slot on August 4, 2015; and deliberate indifference claims against Defendants Rakers and Misty for refusing Plaintiff medical attention for his resulting injuries;

**Count 13:** Claims against Unknown Defendants for hindering Plaintiff's access to the courts, by failing to give him his legal documents needed for court appearances on July 9 and August 5, 2015;

**Count 14:** Eighth Amendment claim against Unknown Defendant(s) who placed Plaintiff in a cell where the sink and toilet did not function properly, for an

unknown duration beginning on August 26, 2015;

**Count 15:** Fourteenth Amendment claim against Unknown Defendant(s) who damaged Plaintiff's stored property, and who charged Plaintiff $125.00 in connection with the damage, and against Defendant S. Bebout (Internal Affairs) for making false statements about the condition of Plaintiff's property;

**Count 16:** Eighth Amendment claims against Defendant Sgt. Bebout for inciting three inmates to attack Plaintiff on November 10, 2015; against Defendant Swisher for using excessive force (mace) against Plaintiff during the attack; and against Defendant Chad for failing to give Plaintiff medical attention after the attack;

**Count 17:** Eighth Amendment deliberate indifference claim against Defendant Migneron, for refusing to allow Plaintiff to leave his cell on passes to obtain psychological care and clothing;

**Count 18:** Eighth Amendment claim against Defendant S. Bebout (Internal Affairs) for failing to protect Plaintiff from contact with fellow inmate White, and instead allowing Plaintiff to be housed in a cell next to White in January 2016;

**Count 19:** First Amendment retaliation claim against Defendant S. Bebout (Internal Affairs) for allowing Plaintiff to be housed next to inmate White, to get back at Plaintiff for going on a hunger strike and asking to be placed on suicide watch.

The variety of claims against different Defendants raises the question of whether all Plaintiff's claims may properly proceed together in the same action. In *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), the Seventh Circuit emphasized that unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *George*, 507 F.3d at 607, (citing 28 U.S.C. § 1915(b), (g)). Claims against different Defendants, which do not arise from a single transaction or occurrence (or series of related transactions/occurrences), and do not share a common question of law or fact, may not be joined in the same lawsuit. *See* FED. R. CIV. P. 20(a)(2). Further, a prisoner who files a "buckshot complaint" that includes multiple unrelated claims against

different individuals should not be allowed to avoid "risking multiple strikes for what should have been several different lawsuits." *Turley v. Gaetz*, 625 F.3d 1005, 1011 (7th Cir. 2010) (citing *George*). The Court has broad discretion as to whether to sever claims pursuant to Federal Rule of Civil Procedure 21, or to dismiss improperly joined Defendants. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000).

Plaintiff's Complaint is the type of "buckshot complaint" as described in *Turley*. It contains at least nine unrelated groups of claims against different Defendants. Claims such as Counts 3, 4 and 16, which arose from different incidents, but involve the same Defendant (Sgt. Bebout), are properly joined in the same action. *See* FED. R. CIV. P. 18. Those three claims against Defendant Sgt. Bebout shall remain in the instant case. Similarly, Counts 8, 9 and 12 shall be grouped together because Defendant Rakers is named in each claim. Counts 10 and 11 both involve Defendants Eoavaldi and Paige. Counts 15, 18 and 19 each include Defendant S. Bebout (Internal Affairs). Each of these sets of claims is based on distinct actions and/or incidents occurring on different dates. The claims against Defendant Sgt. Bebout do not share any common issues of law or fact with the claims against Defendant Rakers, nor do either of these groups of claims have common factual or legal issues with the groups of claims against Defendants Eoavaldi and Paige or those against Defendant S. Bebout.

Consistent with the *George* decision and Federal Rule of Civil Procedure 21, the Court will sever the claims that are unrelated to Counts 3, 4 and 16 into separate actions, and will open a new case with a newly-assigned case number for each set of severed claims. Plaintiff will be assessed an additional filing fee for each of the newly severed cases. Again, only the claims involving Defendant Sgt. Bebout in Counts 3, 4 and 16 shall remain in this action.

Plaintiff's other claims shall be grouped into eight separate severed actions as follows and as further specified in the "Disposition" section below.  Each of these newly-severed cases shall undergo preliminary review pursuant to § 1915A after the new case number and judge assignment has been made.

> **First Severed Case:**  Counts 1, 2, 6, and 14, against Unknown (John Doe) Defendants.  Each of these claims challenges an aspect of Plaintiff's conditions of confinement (tampering with clothing and food, and cell sanitation);
>
> **Second Severed Case:**  Count 5 (grievances) against Defendants Nippe, Butler, and Hill;
>
> **Third Severed Case:**  Count 7 against Unknown Defendant(s) who instigated the July 20 attack on Plaintiff, and against Defendant Brookman for disciplining Plaintiff in connection with that attack;
>
> **Fourth Severed Case:**  Counts 8 (threats), 9 (withholding food), and 12 (excessive force and deliberate indifference) against Defendant Rakers, which also involve Defendants Slavens, Harris, and Misty;
>
> **Fifth Severed Case:**  Counts 10 (excessive force) and 11 (cell conditions) against Defendants Eoavaldi and Paige, and Unknown Orange Crush Team Defendants;
>
> **Sixth Severed Case:**  Count 13 against Unknown Defendants for denying Plaintiff access to the courts on June 9 and August 5, 2015;
>
> **Seventh Severed Case:**  Counts 15 (property) against Unknown Defendants and Defendant S. Bebout, and 18 (failure to protect) and 19 (retaliation) against Defendant S. Bebout;
>
> **Eighth Severed Case:**  Count 17 (deliberate indifference) against Defendant Migneron.

Plaintiff is advised that some of the severed claims may be subject to further severance if the merits review discloses that the claims are not properly joined.  Further, Plaintiff may be required to submit an amended complaint in some of the severed cases, particularly where he has not identified the prison official(s) responsible for the alleged unconstitutional actions.

The merits of the claims in Counts 3, 4 and 16 shall be reviewed below.

### Merits Review Pursuant to 28 U.S.C. § 1915A

### Count 3 – Unsanitary Cell Conditions

In a case involving conditions of confinement in a prison, two elements are required to establish a violation of the Eighth Amendment's cruel and unusual punishments clause. First, an objective element requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The second requirement is a subjective element – establishing a defendant's culpable state of mind, which is deliberate indifference to a substantial risk of serious harm to the inmate from those conditions. *Farmer*, 511 U.S. at 837, 842.

Here, Plaintiff claims that Defendant Sgt. Bebout and Defendant Best had the water and toilet in his cell shut off on July 2, 2015, after Plaintiff flooded his cell to get attention. Plaintiff appears to concede that the shutoff was a reasonable response to his own disruptive action. However, he claims that the water and toilet were cut off for a longer period than was authorized. His recitation of facts indicates that he was still without a working toilet or running water on July 5, 2015. This period of approximately four days where Plaintiff could not flush his toilet or use the sink raises a question as to whether those cell conditions violated constitutional norms.

Unsanitary cell conditions including the lack of water or a functional toilet have been found to state a claim under the Eighth Amendment, particularly when combined with filth in the cell. *See Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007) (prisoner held in cell for three to six days with no working sink or toilet, floor covered with water, and walls smeared with blood and feces); *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992) (summary judgment improper where inmate alleged he lived with "filth, leaking and inadequate plumbing, roaches, rodents, the constant smell of human waste, . . . [and] unfit water to drink[.]"); *Johnson v. Pelker*, 891 F.2d

136, 139 (7th Cir. 1989) (inmate held for three days in cell with no running water and feces smeared on walls); *see also, DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (thirty-six hours with no working toilet, flooded cell and exposure to human waste as well as the odor of accumulated urine, stated Eighth Amendment claim). *See also Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013) ("unhygienic conditions, when combined with the jail's failure to provide detainees with a way to clean for themselves with running water or other supplies, state a claim for relief").

It is unclear at this stage whether Plaintiff's cell conditions during the period from July 2-5, 2015, rose to the level of an Eighth Amendment violation. Further factual development is appropriate, thus **Count 3** may proceed against Defendants Sgt. Bebout and Best at this time.

**Count 4 – Excessive Force - Attempted Beating**

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under § 1983. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). An inmate must show that an assault occurred, and that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*, 559 U.S. at 40 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins*, 559 U.S. at 37-38 (the question is whether force was de minimis, not whether the injury suffered was de minimis); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001).

In some circumstances, a threat of harm may rise to the level of cruel and unusual punishment. *Dobbey v. Ill. Dept. of Corr.*, 574 F.3d 443, 445 (7th Cir. 2009) (harassment can violate the Eighth Amendment where it involves a "credible threat to kill, or to inflict any other physical injury"). *See also Irving v. Dormire*, 519 F.3d 442, 445, 449-50 (8th Cir. 2008) (officer's attempt to have other inmates attack plaintiff may violate Eighth Amendment, even where the plaintiff was not actually assaulted); *Northington v. Jackson*, 973 F.2d 1518, 1525 (10th Cir. 1992) (Eighth Amendment claim stated where guard "intended to do harm to [a prisoner] by inciting inmates to beat him[;]" guard told other inmates that plaintiff was a snitch). In the instant case,

On July 5, 2015, while Plaintiff was still in the cell without a working toilet or running water, he threw spoiled food and feces on an inmate worker after he received a food tray containing trash. Defendants Sgt. Bebout and Mayer told Plaintiff to "cuff up[,] we're going to let Cosmo (Linzy) beat your ass for that nasty shit you did" (Doc. 1, p. 26). Major Hughes came on the scene after Plaintiff refused to cuff up and Plaintiff told him that Bebout and Mayer were going to let the worker beat him. Major Hughes told Defendants Sgt. Bebout and Mayer to take Plaintiff to the cell, not to the shower (where Plaintiff alleges beatings take place). Plaintiff was not beaten by anyone on that occasion.

Although Plaintiff escaped harm in this incident, the attempt by Defendants Sgt. Bebout and Mayer to arrange for another inmate to physically attack Plaintiff may amount to a constitutional violation. According to Plaintiff, the assault was thwarted only by the intervention of Major Hughes. Taking Plaintiff's facts as true, as the Court must do at this stage, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), **Count 4** may also proceed for further review.

**Count 16 – Inciting Attack; Excessive Force; Deliberate Indifference**

This claim is based on Plaintiff's allegations that on November 10, 2015, three other inmates attacked him in the yard without any provocation. Plaintiff was later told by Defendant Bump that the attack was instigated by Defendant Sgt. Bebout. During the assault, Defendant Swisher used mace on Plaintiff. Plaintiff claims that after it was over, Defendant Chad refused to get him medical attention or anything for pain relief, even though he had suffered kicks to his head.

As noted in the discussion under Count 4, an officer who incites inmates to attack another prisoner may be found liable for an Eighth Amendment violation. The claim against Defendant Sgt. Bebout may therefore proceed. No claim is stated, however, against Defendant Bump, who merely reported the information to Plaintiff (after the fact) that Defendant Sgt. Bebout was behind the assault. Defendant Bump shall therefore be dismissed from the action without prejudice.

Plaintiff's claim against Defendant Swisher is that he sprayed Plaintiff with mace when use of force was not necessary, as Plaintiff was the victim of the attack. This Eighth Amendment claim may also proceed.

Finally, the failure to obtain medical assistance for an inmate who has been assaulted may constitute deliberate indifference to a serious medical need, if the inmate's injuries were known to the defendant. *See Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012). Plaintiff indicates that Defendant Chad was aware that he had been severely beaten, but told him to "man up" instead of providing Plaintiff with pain relief or medical help. At this stage, the claim in **Count 16** against Defendant Chad also warrants further consideration.

**Dismissal of Additional Defendants**

In addition to the defendants whom Plaintiff has associated with the various Counts enumerated above, Plaintiff lists a number of individual defendants who are never mentioned in the body of the Complaint. These defendants who are not associated with any claims are: Roth, Sims, Justin Engelage, Nagel, Cushman, Tonya Knust, Lee, S. Ebers, C/O Leposky, Stell and C/O Hanks. In addition, Plaintiff lists an Unknown Party Doctor and Unknown Party Commanding Officer among the defendants, but does not set forth any factual allegations describing what those individuals may have done to violate his rights.

Plaintiffs are required to associate specific defendants with specific claims, so that defendants are put on notice of the claims brought against them and so they can properly answer the complaint. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); Fed. R. Civ. P. 8(a)(2). Where a plaintiff has not included a defendant in his statement of the claim, the defendant cannot be said to be adequately put on notice of which claims in the complaint, if any, are directed against him. Furthermore, merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998).

As for those Defendants in supervisory positions, the doctrine of *respondeat superior* is not applicable to § 1983 actions. *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted). Plaintiff has not alleged that a supervisory defendant was "personally responsible for the deprivation of a constitutional right," *id.*, and a defendant cannot be liable merely because he supervised a person who caused a constitutional violation.

For the above reasons, Defendants Roth, Sims, Engelage, Nagel, Cushman, Knust, Lee, Ebers, Leposky, Stell, Hanks, the Unknown (John Doe) Doctor and the Unknown (John Doe)

Commanding Officer shall be dismissed from this action without prejudice.[2]

### Pending Motion

Plaintiff's Motion for Recruitment of Counsel (Doc. 3) shall be referred to the United States Magistrate Judge for further consideration.

### Disposition

Defendants **ROTH, SIMS, ENGELAGE, NAGEL, CUSHMAN, KNUST, BUMP, LEE, EBERS, LEPOSKY, STELL, HANKS**, the **UNKNOWN (JOHN DOE) DOCTOR** and the **UNKNOWN (JOHN DOE) COMMANDING OFFICER** are **DISMISSED** from this action without prejudice, for failure to state a claim against them upon which relief may be granted.

**IT IS HEREBY ORDERED** that Plaintiff's claims in **COUNTS 1, 2, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 17, 18 and 19**, which are unrelated to the claims in Counts 3, 4 and 16, are **SEVERED** into eight new cases, as follows:

**First Severed Case:** Counts 1, 2, 6 and 14

>(Count 1) Eighth and/or Fourteenth Amendment claim against Unknown Defendants who threw away Plaintiff's laundry on June 17, 2015;
>
>(Count 2) Eighth Amendment claim against Unknown Defendants who denied Plaintiff a meal on July 2, 2015, and put trash in Plaintiff's food on July 5, 2015;
>
>(Count 6) Eighth Amendment claim against Unknown Defendants who kept Plaintiff in his cell for several hours after it was flooded with urine and feces on July 17, 2015;
>
>(Count 14) Eighth Amendment claim against Unknown Defendant(s) who placed Plaintiff in a cell where the sink and toilet did not function properly, for an unknown duration beginning on August 26, 2015;

---

[2] Plaintiff did not connect these John Does to any of his claims. At the same time, he did not identify the responsible Defendants for several of the Counts designated by the Court herein. Therefore, several Unknown (John Doe) Defendants shall remain in the severed actions.

**Second Severed Case:**

(Count 5) Fourteenth Amendment Due Process claim against Defendants Nippe, Butler, and Hill for failing to answer Plaintiff's grievances;

**Third Severed Case:**

(Count 7) Eighth Amendment claim against unknown Defendant(s) who incited other inmates to attack Plaintiff in the yard on July 20, 2015, and against Defendant Brookman for imposing disciplinary segregation on Plaintiff as punishment for fighting back after he was attacked;

**Fourth Severed Case:** Counts 8, 9, and 12

(Count 8) Eighth Amendment claim against Defendants Rakers and Slavens for threatening Plaintiff on July 29, 2015, after another inmate blamed Plaintiff for throwing feces;

(Count 9) Eighth Amendment claim against Defendants Rakers and Harris, for failing to feed Plaintiff a meal on July 30, 2015;

(Count 12) Eighth Amendment excessive force claim against Defendant Rakers for slamming Plaintiff's hand in the food slot on August 4, 2015; and deliberate indifference claims against Defendants Rakers and Misty for refusing Plaintiff medical attention for his resulting injuries;

**Fifth Severed Case:** Counts 10 and 11

(Count 10) Eighth Amendment claim against Defendants Eoavaldi and Paige, for sending the Orange Crush team to remove Plaintiff from his cell on July 30, 2015, and against the Unknown Orange Crush Officers, for subjecting Plaintiff to excessive force on that date;

(Count 11) Eighth Amendment claim against Defendants Eoavaldi and Paige, for having Plaintiff placed in a cell with no water, no working toilet, no mattress, and no clothing, from July 30 until approximately August 5, 2015;

**Sixth Severed Case:**

(Count 13) Claims against Unknown Defendants for hindering Plaintiff's access to the courts, by failing to give him his legal documents needed for court appearances on July 9 and August 5, 2015;

**Seventh Severed Case:** Counts 15, 18, and 19

(Count 15) Fourteenth Amendment claim against Unknown Defendant(s)

who damaged Plaintiff's stored property, and who charged Plaintiff $125.00 in connection with the damage, and against Defendant S. Bebout (Internal Affairs) for making false statements about the condition of Plaintiff's property;

(Count 18) Eighth Amendment claim against Defendant S. Bebout (Internal Affairs) for failing to protect Plaintiff from contact with fellow inmate White, and instead allowing Plaintiff to be housed in a cell next to White in January 2016;

(Count 19) First Amendment retaliation claim against Defendant S. Bebout (Internal Affairs) for allowing Plaintiff to be housed next to inmate White, to get back at Plaintiff for going on a hunger strike and asking to be placed on suicide watch;

**Eighth Severed Case:**

(Count 17) Eighth Amendment deliberate indifference claim against Defendant Migneron, for refusing to allow Plaintiff to leave his cell on passes to obtain psychological care and clothing.

The claims in each newly severed case shall be subject to merits review pursuant to 28 U.S.C. § 1915A after the new case number and judge assignment is made. In each new case, the Clerk is **DIRECTED** to file the following documents:

(1)   This Memorandum and Order
(2)   The Original Complaint and exhibits (Docs. 1, 1-1, and 1-2)
(3)   Plaintiff's motion for leave to proceed *in forma pauperis* (Doc. 3)

Plaintiff **will be responsible for an additional $350.00 filing fee** in each new case. No service shall be ordered on the Defendant(s) in the severed cases until the § 1915A review is completed.

**IT IS FURTHER ORDERED** that the *only claims remaining in this action are COUNT 3, COUNT 4, and COUNT 16 against Defendants (SGT.) BEBOUT, SWISHER, CHAD, BEST, and MAYER*. This case shall now be captioned as: **KENTES WEST, Plaintiff, vs. (SGT.) BEBOUT, SWISHER, CHAD, BEST, and MAYER, Defendants.**

**IT IS FURTHER ORDERED** that Defendants **BUTLER, RAKERS, MIGNERON,**

**HARRIS, EOAVALDI, HILL, PAIGE, NIPPE, S. BEBOUT (Internal Affairs), BROOKMAN, SLAVENS, and MISTY** are **TERMINATED** from *this* action with prejudice.

As to **COUNTS 3, 4, and 16**, which remain in the instant case, the Clerk of Court shall prepare for Defendants **SGT. BEBOUT, SWISHER, CHAD, BEST,** and **MAYER**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Philip M. Frazier** for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Frazier for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: August 29, 2016**

s/ STACI M. YANDLE  
United States District Judge
